**William SMITH (97–A–7257), Petitioner,**

v.

**V. HERBERT, Superintendent, Respondent.**

No. 00–CV–5615 (JBW).
No. 03–MISC–0066 (JBW).

United States District Court,
E.D. New York.

July 30, 2003.

William Smith, Romulus, NY, Pro se.

Amy M. Appelbaum, The Office of the District Attorney, Kings County, Brooklyn, NY, for Respondent.

## MEMORANDUM, JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

### I. Facts and Procedural History

Petitioner was charged with two counts of murder in the second degree, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree in connection with the shooting death of Lateek Escort.

Petitioner belonged to a gang whose members sold crack cocaine in front of an apartment building at 1223 Bushwick Avenue in Brooklyn. A series of altercations took place between Jose Mendez, a member of petitioner's gang, and Anthony Williams, who lived in an apartment on the first floor of that building. After an incident on September 27, 1993 in which Williams shot Mendez in the leg, Williams fled the building at 1223 Bushwick. He returned that same evening with three friends, Lateek Escort, Walter Humphrey, and Phillip O'Garro. As they approached the building, petitioner pointed a gun at them from near the front of 1223 Bushwick and fired that gun a number of times. Humphrey also admits to firing a gun during the altercation. Escort was shot twice and died later at the hospital.

Petitioner made a number of statements to the police, in all but the first of which he admitted to taking a gun either from under a radiator at the apartment building or from another individual present, and to shooting at Williams and his friends. He contended that he did not shoot until after he had been shot at, and was shooting in self defense.

A mistrial was declared in petitioner's first jury trial when the jury was unable to reach a verdict. At a second jury trial, the victim's father, Mendez, Williams, Humphrey, O'Garro, a female tenant at 1223 Bushwick, several police officers and detectives, and a medical examiner testified for the state. Petitioner did not put on a case. One count of murder in the second degree (depraved indifference murder), one count of criminal possession of a weapon in the second degree, and the lesser included offense of criminal possession of a

weapon in the third degree were submitted to the jury for its consideration. The jury found petitioner guilty of criminal possession of a weapon in the second degree. It deadlocked on murder, and the trial court declared a mistrial as to that count.

Prior to sentencing, petitioner pled guilty to manslaughter in the second degree in satisfaction of the remaining counts of the indictment pursuant to a plea offer under which he waived his right to appeal the manslaughter conviction. He was sentenced to a minimum term of five years imprisonment and a maximum term of fifteen years imprisonment on both counts, with the sentences to run concurrently.

Petitioner moved *pro se* to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10 on the ground that an unspecified prosecution witness had committed perjury at his trial. The motion was denied by the Supreme Court in August 1999; leave to appeal was denied by the Appellate Division in August 2000. Petitioner's conviction and sentence were affirmed by the Appellate Division in April 2000. The New York Court of Appeals denied leave to appeal that order in July 2000.

In the instant application for a writ of habeas corpus, petitioner claims (1) that his conviction was obtained as the result of coerced and perjured testimony; (2) that the trial court's jury instructions deprived him of a fair trial; (3) that evidentiary errors—specifically the admission of statements concerning his prior possession of a weapon, his gang affiliation, and his drug-related activities, and the exclusion of a taped conversation during a 911 telephone call—denied him his right to a fair trial; and (4) that the jury's verdict was repugnant.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

▇▇▇ An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman,* 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle,* 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton,* 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III. Exhaustion

■ In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy,* 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc).

Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane,* No. 98 CIV. 1604, 2000 WL 12142, at *3–4 (S.D.N.Y. 2000) (state's failure to raise exhaustion requirement does not waive the issue).

## IV. Procedural Bar

■ A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed,* 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett,* 98 F.3d 721, 724–25 (2d Cir.1996). When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Services,* 235 F.3d 804, 810 (2d Cir. 2000). Where "a state court's ruling does not make clear whether a claim was rejected for procedural or substantive reasons and where the record does not otherwise preclude the possibility that the claim was denied on procedural grounds, AEDPA deference is not given, because we cannot say that the state court's decision was on the merits." *Su v. Filion,* 335 F.3d 119, 126 n. 3 (2d Cir.2003) (citing *Miranda v. Bennett,* 322 F.3d 171, 178 (2d Cir.2003)). This congeries of holdings leaves it an

open question whether there are "situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.*

## V. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir. 2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit").

A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. **Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit.** *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

## VI. Analysis of Claims

■ As an initial matter, respondent contends that the court should decline to review petitioner's claims under the "concurrent sentence doctrine." The concurrent sentence doctrine by definition "permits an appellate court, within its discretion, to affirm summarily a conviction for which an appellant's sentence runs concurrently with that for another, valid conviction." *United States v. Vargas,* 615 F.2d 952, 956 (2d Cir.1980). It has been applied by courts hearing habeas petitions. *See, e.g., United States ex rel. Weems v. Follette,* 414 F.2d 417 (2d Cir.1969). Application of the concurrent sentence doctrine is now disfavored, and is the exception rather than the rule. *See Rutledge v. United States,* 517 U.S. 292, 302, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996) ("The separate conviction, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored.") (quoting *Ball v. United States,* 470 U.S. 856, 864–65, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)); *see also Abdur Raheem v. Kelly,* 257 F.3d 122 (2d Cir.2001) (reversing district court decision noting the concurrent sentence doctrine as an alternative ground for denying the petition; remanding for judgment granting the writ while noting because petitioner "is serving concurrent prison terms of 25 years to life on the basis of other convictions as well, the judgment in this case does not require his release"). The court declines to rely on it here.

■ Petitioner claims that his conviction was obtained as the result of coerced and perjured testimony, specifically the testimony of witnesses Jose Mendez, Anthony Williams, Phillip O'Garro, and Dr. Joaquin Gutierrez. To the extent that petitioner is claiming that the prosecutor knowingly allowed its witnesses to give perjured testimony, the claim has been exhausted. It was presented by petitioner in his *pro se* motion to vacate his judgment of conviction. The claim may therefore be addressed on its merits pursuant to AEDPA's deferential standard of review.

■ A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). Under this standard, a conviction must be set aside if "the prosecution knew, or should have known, of the perjury," and "there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The court of appeals for the Second Circuit has thus far de-

clined to "draw the countours of the phrase 'should have known.'" *Drake v. Portuondo*, 321 F.3d 338, 345 (2d Cir. 2003). The court of appeals has decreed that, because the Supreme Court has not clearly established that habeas relief is available in the complete absence of prosecutorial knowledge of perjury, AEDPA prevents granting of the writ on such grounds. *Id.* at 345 n. 2 (after AEDPA, habeas petitioners can no longer rely on *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir. 1988), in which habeas relief was granted in the absence of prosecutorial knowledge of perjury).

■ Petitioner's claim is without merit. His state motion to set aside his conviction on this ground was denied by the Supreme Court because "[n]owhere in the defendant's motion does he identify the witness who gave the perjured testimony, indicate precisely what was the perjured testimony, nor offer any evidence to document that perjured testimony was in fact presented at his trial." There is no indication that this was an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Petitioner does point to countless, and troubling, inconsistencies within the statements and testimony of witnesses Mendez, Williams, and Humphrey during various stages of his proceedings. He has offered no evidence, however, that would indicate that any particular testimony given at his second trial by these witnesses, or by the medical examiner Dr. Gutierrez, was perjured, or that the prosecutor knowingly allowed that testimony to be given. The witnesses were effectively cross-examined with respect to any discrepancies within their own testimony and contradictions with other testimony and evidence in the case, and the jury was free to come to its own conclusions as to the credibility of each. Moreover, there is no reasonable likelihood that false testimony given by

these witnesses could have affected the decision of the jury with respect to the criminal possession of a weapon charge. The allegedly false statements do not deal with petitioner's possession or use of a gun. Petitioner admitted to possessing and using a gun on the night of September 27, 1993 in a number of statements presented to the jury.

■ To the extent that petitioner is claiming that testimony at his trial was coerced, his claim has not been exhausted and is not procedurally barred. Petitioner may be able to raise this claim in state court in a second motion to vacate his judgment of conviction. *See* N.Y.Crim. Pro. L. § 440.10(3). Because it is clear, however, that this claim is without merit the court will deny the writ notwithstanding petitioner's failure to exhaust state remedies. *See* 28 U.S.C. § 2254(b)(2). A claim that coerced testimony was improperly introduced is analyzed under the Due Process Clause of the Fourteenth Amendment, in a manner similar to a claim of perjured testimony. *Cf. Drake v. Portuondo*, 321 F.3d 338, 344–45 (2d Cir.2003) (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)). A petitioner is entitled to habeas relief if the trial court's admission of a witness's coerced testimony rendered the trial so fundamentally unfair as to violate due process. *See Williams v. Woodford*, 306 F.3d 665, 691–694 (9th Cir.2002). Petitioner here has offered no evidence that the testimony of any witness was coerced, that he lacked the ability to effectively cross examine any witness at trial, or, as discussed above, that false testimony, if any was given, rendered his trial so fundamentally unfair as to violate due process.

■ Petitioner's claim that the trial court's jury instructions deprived him of a fair trial is exhausted, is not procedurally barred, and was adjudicated by the state

court on its merits. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." *Casillas v. Scully,* 769 F.2d 60, 63 (2d Cir.1985). In weighing the prejudice from an allegedly improper charge, a reviewing court must view the instruction in its total context. *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). The question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147, 94 S.Ct. 396.

Counsel for petitioner requested a charge on transitory, or "temporary and lawful," possession with respect to the criminal possession of a weapon in the second degree charge. That request was denied by the trial court. The jury was instructed on this count as follows:

What is Criminal Possession of Weapon in the Second Degree?

A person is guilty of that crime when he possesses a loaded firearm with the intent to use that loaded firearm unlawfully against another person.

In order for you to find the defendant guilty of this crime the People must prove to your satisfaction beyond a reasonable doubt each of the following four elements:

First, that on or about September 27, 1993, here in Kings County, the defendant possessed a certain object.

To possess means to exercise control over it.

The second element is that what the defendant possessed was, in fact, a loaded and operable firearm; in this case a handgun.

A firearm is any pistol or revolver. A loaded firearm means any firearm that's loaded with ammunition which may be used to discharge, be fired from.

The third element is that the defendant knowingly possessed the loaded firearm.

According to our law, a person knowingly possesses a loaded firearm when he is aware that he had it in his possession.

And the fourth and final element is that the defendant possessed the loaded firearm with the intent to use it unlawfully against another.

The fact of intent on the part of a person is the secret operation of his mind. Our law permits, however, but it does not require, that you may infer the intent to use unlawfully under certain circumstances.

A person intends to use a loaded firearm unlawfully against another when his conscious aim or objective is to use it unlawfully against another.

Under our law the possession by a person of a loaded weapon is presumptive evidence of the intent to use it unlawfully against another.

What this means is that after careful consideration of all of the evidence you may presume or infer from the defendant's possession of a loaded firearm that he did intend to use it unlawfully against another, or after reviewing all of the circumstances in this case you may reject this presumption or inference.

The fact that you may infer unlawful intent does not shift to the defendant any burden to prove to you that he did not intend to use it unlawfully. This burden remains on the prosecution. Each of you, after careful consideration of all of the evidence, must be satisfied that the prosecution has proved every element of this crime beyond a reasonable doubt. If you are so satisfied then you should find the defendant guilty of

Criminal Possession of a Weapon in the Second Degree.

On the other hand, if you have a reasonable doubt about any one or more of these elements then you must find the defendant not guilty of this crime.

The jury was also charged on criminal possession of a weapon in the third degree, which requires that the defendant's possession of the firearm take place outside his or her home or place of business, but does not require that the defendant have any intent to use the firearm unlawfully. The Appellate Division affirmed the Supreme Court's denial of petitioner's request to submit a transitory possession charge to the jury, finding that "[u]nder the circumstances of [the] case, the defendant was not entitled to a charge of temporary and lawful possession of a weapon." *People v. Smith,* 707 N.Y.S.2d 859 (2d Dep't 2000).

 The court's charge does not misstate state law, much less violate a right guaranteed to petitioner by federal law. The judge in instructing the jury properly recognized that under New York law "the mere possession of a weapon is not criminal in every instance." *People v. Banks,* 76 N.Y.2d 799, 801, 559 N.Y.S.2d 959, 559 N.E.2d 653 (1990). To trigger the right to a charge on temporary and lawful possession, however, "there must be proof in the record showing a legal excuse for having the weapon in defendant's possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner." *Id.* (internal quotation omitted). Regardless of whether or not the instant petitioner had a legal excuse for possessing the firearm, all evidence in the record tends to establish that he did use it in a dangerous manner by firing it as Williams, Escort, O'Garro, and Humphrey approached the building at 1223 Bushwick. The New York Supreme Court and the

Appellate Division correctly concluded that a transitory possession charge was not justified under the circumstances of the case.

 Petitioner next claims that testimony with respect to his possession of the gun used during the shooting, a Mac 11, prior to the incident on September 27, 1993 and with respect to his gang-affiliation and drug-related activities was improperly introduced, and that the trial court erred in refusing to allow the tape of a 911 call to be played for the jury. These evidentiary claims are deemed exhausted but are procedurally barred; petitioner did not raise them on direct appeal of his conviction and sentence. *See Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994); *Washington v. James,* 996 F.2d 1442, 1446–47 (2d Cir.1993); N.Y.Crim. Pro. Law § 440.10(2)(c). Petitioner has failed to establish cause for, or actual prejudice resulting from, this default. A failure to consider the claims will not result in a fundamental miscarriage of justice because they are without merit.

 For a habeas petitioner to prevail on a claim that an evidentiary error amounted to a deprivation of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This test applies post-AEDPA. *See Wade v. Mantello,* 333 F.3d 51 (2d Cir.2003). For a claim that evidence was improperly introduced, the standard is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been 'crucial, critical, highly significant.'" *Collins v. Scully,* 755 F.2d 16, 19 (2d Cir.1985) (quoting *Nettles v. Wainwright,* 677 F.2d

410, 414–15 (5th Cir.1982)). The improper exclusion of evidence is likewise "unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). Even assuming that the evidence to which petitioner objects was improperly admitted or excluded, petitioner has failed to demonstrate that the evidence was crucial to, or affected at all, his conviction for criminal possession of a weapon.

■■■■ Petitioner finally claims that the jury's verdict was repugnant. He argues that because the jury deadlocked on the murder count they could not possibly have found all elements of criminal possession of a weapon in the second degree, which includes the intent to use unlawfully. This claim was not exhausted and is procedurally barred. At any rate, it does not set forth a federal question. A purported inconsistency in a state court verdict is generally not a basis on which to grant habeas corpus relief. *See Harris v. Rivera*, 454 U.S. 339, 344–45, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981); *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Moreover, there is no inconsistency in the verdict. *See, e.g., People v. Pons*, 68 N.Y.2d 264, 508 N.Y.S.2d 403, 501 N.E.2d 11 (1986); *People v. Tucker*, 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981); *People v. Guzman*, 266 A.D.2d 37, 697 N.Y.S.2d 623 (1st Dep't 1999).

VII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right.

SO ORDERED.