William LOPEZ, Petitioner,

v.

David L. MILLER, Superintendent, Eastern Correctional Facility, Respondent.

No. 02–CV–3988 (NGG).

United States District Court, E.D. New York.

July 10, 2012.

See also 197 A.D.2d 594, 602 N.Y.S.2d 872.

Richard Ware Levitt, Yvonne Shivers, Levitt & Kaizer, New York, NY, for Petitioner.

Kings County District Attorneys Office, New York State Attorney Generals Office–Generic, Howard Barry Goodman, Phyllis Ruth Mintz, Brooklyn, NY, for Respondent.

## MEMORANDUM & ORDER

NICHOLAS G. GARAUFIS, District Judge.

The court must decide the circumstances under which the Supreme Court's recent decision in *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), permits it to hold an evidentiary hearing to resolve a claim raised in a federal habeas petition that was previously adjudicated on the merits in state court. For the reasons that follow, Petitioner William Lopez is entitled to an evidentiary hearing on both his gateway claim of actual innocence and his claim of ineffective assistance of counsel. With respect to the latter claim, however, *Pinholster* precludes the court from relying upon evidence produced at the hearing to determine whether, under 28 U.S.C. § 2254(d), the state court's adjudication of Lopez's ineffective assistance claim involved an unreasonable application of federal law or was based on an unreasonable determination of the facts. But if the court later concludes— based solely on the state court record— that the state court's decision was unreasonable under § 2254(d), it will consider the evidence generated at the hearing to determine whether Lopez is being held in custody in violation of the United States Constitution, thus entitling him to habeas relief under 28 U.S.C. § 2254(a). The court will hold the hearing on Lopez's claims before it rules on the substance of those claims.

## I. BACKGROUND

### A. Trial Evidence and Proceedings [1]

On August 31, 1989, sometime after 2:00 a.m., two men entered the basement of a crackhouse on 3053 Brighton Fifth Street in Brooklyn and demanded money and drugs from a drug dealer named Elvirn Surria. (Trial Tr. (Docket Entry # 59–2) at 247–50.) One of the men shot Surria twice with a double-barreled shotgun and killed him. (*Id.* at 250–54.)

---

1. The factual record in Lopez's case is extensive and complex, but the court will limit its discussion to those facts necessary to understand the narrow issues presented here.

Petitioner William Lopez was charged for this shooting in New York Supreme Court, Kings County. (Kean Aff. (Docket Entry of Mar. 12, 2003) ¶ 4.) Following a jury trial before Justice Carolyn E. Demarest, he was convicted of second-degree murder, second-degree possession of a weapon, and third-degree possession of a weapon. (*Id.* ¶ 5; Trial Tr. (Docket Entry ## 59–1, 59–2, 59–3).)

The prosecution's case at trial consisted primarily of an eyewitness identification by Janet Chapman, who was living in the basement of the crackhouse at the time of the shooting. (Trial Tr. (Docket Entry # 59–2) at 331–32, 352–59.) On the night of the murder, Chapman was in her room in the midst of a two-day crack binge, and had smoked approximately ten to twelve vials of crack in the previous two hours. (*Id.* at 353, 368, 389–91, 486, 510, 512–16.) She testified that, through the partially ajar door to her room, she saw Lopez shoot Surria with a sawed-off shotgun. (*Id.* at 353–55, 358, 364–65, 376.) Several months after trial, Chapman recanted her testimony in written form and stated that Lopez was not present at the scene of the crime; she claimed that her testimony was a "pure fabrication" made under duress from the prosecution. (Chapman Ltrs. & Aff. (Docket Entry # 55–2).)

The only other prosecution witness was Daisy Guadalupe Flores Lopez ("Flores"), who was working at the crackhouse for Surria and was in the room at the time he was shot. (Trial Tr. (Docket Entry # 59–2) at 230, 232, 247–54.) Flores was unable to identify Lopez as the shooter at trial. (*Id.* at 225.) She described the shooter as a "tall, dark, black" Hispanic man close to 6'3 in height (*id.* at 258–59, 528); Lopez, on the other hand, was about 5'7 in height and the prosecutor conceded at trial that his "complexion could not be described as black" (*id.* at 528).

According to Lopez, both prior to and during the trial he informed his attorney, William Lupo, that two alibi witnesses— Helen Guido, Lopez's mother-in-law, and Lydia Rivera, his sister-in-law—were willing to testify that Lopez had been with them at the time of the shooting. (*See* Lopez Aff. (Docket Entry # 55–3) at 1; Guido Aff. (Docket Entry # 55–5); Rivera Aff. (Docket Entry # 55–6).) During trial, counsel told the court that he had conferred with Lopez about calling one of these witnesses. (Trial Tr. (Docket Entry # 59–3) at 537.) He stated that he had "interviewed that alibi witness" at "considerable length," that he had advised Lopez not to present the testimony of this witness, and that Lopez had agreed with that advice. (*Id.* at 536–37.) The court asked Lopez whether counsel had spoken truthfully and whether Lopez was "satisfied in not presenting whoever this witness was," and Lopez responded in the affirmative. (*Id.* at 537.) Lopez now claims, however, that he learned years later that counsel had not in fact spoken to either Guido or Rivera. (Lopez Aff. at 2.) Guido and Rivera have also sworn that counsel never spoke to them regarding an alibi defense. (Guido Aff.; Rivera Aff.)

After trial but prior to sentencing, the prosecutor sent Lopez's counsel a letter (copied to the court) that had been sent to the Richmond County District Attorney's Office by a Riker's Island inmate named Earline Cafield. (Allen Ltr. of Nov. 2, 1990 (Docket Entry # 55–7).) Cafield's letter stated that Chapman had told her that the person Chapman was testifying against did not commit the crime. (*Id.* at 2–4.) The defense did not take any action on this letter prior to Lopez's sentencing: Lupo was incapacitated after the verdict, having undergone heart bypass surgery (and is now deceased); Leighton Jackson, who had second-seated Lupo during trial,

declined to represent Lopez in Lupo's absence; Frank Lopez, another attorney, made one appearance on behalf of Lopez and only adjourned the case on its original sentencing date; and Irving Anolik, who was retained to represent Lopez at sentencing and on his appeal, made one mention at sentencing of "a letter [that] was received during the trial or perhaps shortly after the trial from some individual," but was then cut off by the court and never mentioned the letter again (and never made a motion to set aside the verdict based on the letter). (Sentencing Tr. (Docket Entry # 59–3) at 2–5, 18.) Lopez was sentenced to concurrent terms of imprisonment totaling twenty-five years to life. (Kean Aff. ¶ 5.)

### B. Direct Appeal

Still represented by Anolik, Lopez appealed his convictions on six grounds to the Appellate Division, Second Department. (Kean Aff. ¶ 7.) On October 12, 1993, the court affirmed on the merits. *People v. Lopez,* 197 A.D.2d 594, 602 N.Y.S.2d 642 (2d Dep't 1993). Anolik moved for reconsideration, and that motion was denied on January 19, 1994. (Kean Aff. ¶¶ 9–10.)

Anolik did not petition on Lopez's behalf for leave to appeal to the New York Court of Appeals. Lopez wrote to the Appellate Division and the Court of Appeals on June 17, 1997, and July 2, 1997, respectively, inquiring about the status of any leave application. (*Id.* ¶ 11.) He received a letter on July 7, 1997, stating that no application for leave to appeal to the Court of Appeals had been filed on his behalf. (*Id.* ¶ 12.) Thus, on November 29, 1999, Lopez made a motion to the Court of Appeals seeking permission to file a late application for leave to appeal, pursuant to New York

Criminal Procedure Law ("C.P.L.") § 460.30. (*Id.* ¶ 15.) The Court of Appeals dismissed the motion as untimely on May 4, 2000. (*Id.* ¶ 16.) Lopez then filed a petition for writ of coram nobis with the Appellate Division, claiming that his appellate counsel was ineffective for failing to seek leave to appeal to the Court of Appeals. (*Id.* ¶ 18.) The Appellate Division denied this petition on December 24, 2001, 289 A.D.2d 510, 735 N.Y.S.2d 782 (2001). (*Id.* ¶ 21.)

### C. Habeas Petition

On July 5, 2002, Lopez filed a pro se Petition for Writ of Habeas Corpus with this court, raising the same six issues he raised on direct appeal. (Pet. (Docket Entry # 1).) On April 24, 2004, the court dismissed Lopez's Petition as time-barred, on the grounds that it had been filed more than a year after his conviction became final and that there were no extraordinary circumstances meriting equitable tolling of the limitation period.[2] (Docket Entry # 12.)

Lopez moved for reconsideration of the court's decision on the grounds that he was entitled to an exception to the one-year limitation period because he was actually innocent of the crimes of conviction. (Docket Entry ## 14–15.) On September 13, 2005, this court granted Lopez's motion for reconsideration. (Sept. 13, 2005, Mem. & Order (Docket Entry # 17).) The court first noted that, at that time, it was not settled in the Second Circuit whether the Constitution requires an actual innocence exception to the limitation period, but that the Second Circuit had instructed district courts to address this question if confronted with a colorable actual innocence claim. (*Id.* at 1–2 (citing *Whitley v. Senkowski,*

---

**2.** Section 2244(d)(1) of Title 28 provides a one-year limitation period for petitions for

writ of habeas corpus made by persons in custody pursuant to a state court judgment.

317 F.3d 223 (2d Cir.2003)).) The court then found that Chapman's written recantation of her trial testimony (*see* Chambers Ltrs. & Aff.) "appear[ed], assuming its veracity, to provide substantial support for Lopez's actual innocence claim" (Sept. 13, 2005, Mem. & Order at 2). Thus, the court vacated its April 24, 2004, Order, reopened Lopez's case, appointed Lopez counsel, and instructed counsel to engage an investigator to locate Chapman. (*Id.* at 3.)

### D. Investigation

At counsel's request, this court assigned Lawrence Frost to locate Chapman. (Order of Nov. 1, 2005.) Frost eventually learned, however, that Chapman had died. (Frost Aff. (Docket Entry # 55–8) ¶ 3.) Frost was also unable to locate Earline Cafield.[3] (*Id.* ¶ 19.)

Lopez's two potential alibi witnesses, Rivera and Guido, provided affidavits to the defense in 2005. (Rivera Aff.; Guido Aff.) Rivera, Lopez's sister-in-law, stated that on August 31, 1989, the day of the shooting, she resided at 3053 Brighton 3rd Street in Brooklyn with her husband and two children. (Rivera Aff.) She alleges that in the early hours of that day, she, her son, Lopez, and her sister Juliana were in the front of her house drinking refreshments and talking, attempting to patch up a disagreement between Lopez and Juliana. (*Id.*) After the commencement of Lopez's trial, she asked Lopez "how in the world they c[ould] accuse him of doing something as heinous as murdering someone that morning when [they] were all outside in front of the house during that time." (*Id.*) She claims that Lopez's trial attorney, Lupo, never contacted her about testifying on Lopez's behalf. Guido, Lo-

pez's mother-in-law, stated in her affidavit that she owned a home at 4 Brighton 1st Place in Brooklyn where Lopez and Juliana rented an apartment. (Guido Aff.) She "vividly" recalled that, at "approximately two to three in the morning" on the day of the shooting, Lopez had talked to her for about an hour about his disagreement with Juliana. (*Id.*) Guido suggested that Lopez go to the Brighton 3rd Street house to sleep for the night. (*Id.*) Guido stated that that she could "attest with absolute certainty [ ] that [Lopez] could not have committed the crime ... because later after communicating with [her] daughter Lydia Rivera, [she] was informed that [Rivera] was in fact with him during the time frame in which this crime was to have occurred[, a]pproximately 3 to 3:30 am." (*Id.*) She also stated that Lupo never spoke to her about testifying. (*Id.*)

### E. Stay of Proceedings and Motion to Vacate Judgment

On October 29, 2009, following Frost's investigation, the court granted Lopez's motion to stay and hold his Petition in abeyance so that he could exhaust his state court claims. (Docket Entry # 42.) Lopez then moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to C.P.L. § 440.10(1)(d), (g), and (h). (Def. Mot. to Vacate J. (Docket Entry # 59–5).) Lopez raised four grounds for his motion: (1) that he was denied effective assistance of counsel by his trial attorney's failure to investigate and call the potential alibi witnesses and his failure to investigate the Cafield letter; (2) that he was actually innocent of the crime of conviction; (3) that Chapman's recantation, the Cafield letter, and the existence of the alibi wit-

---

**3.** The other elements of Frost's investigation are not pertinent to the court's discussion here.

nesses constituted newly discovered evidence that would have resulted in his acquittal; and (4) that the use of Chapman's perjured testimony at trial violated his due process rights. (Def. Mem. in Supp. of Mot. to Vacate J. (Docket Entry # 59–5) at 21–43.) Lopez also requested an evidentiary hearing. (Id. at 27, 36.)

On December 8, 2010, Justice Demarest (who had presided over Lopez's trial) issued an order denying Lopez's motion to vacate judgment. (N.Y. Sup. Ct. Decision & Order of Dec. 8, 2010 (Docket Entry # 59–6) ("440 Order").) She did not mention Lopez's request for an evidentiary hearing, thus denying that request by implication. (See id.)

First, Justice Demarest rejected Lopez's ineffective assistance claim. (Id. at 5–7.) With respect to counsel's failure to investigate and call the two alibi witnesses, Justice Demarest found that Lopez's allegations were "simply not credible" because they were "directly contradicted" by counsel's statements during trial that he had been informed of a single alibi witness, had spoken to that witness, and had advised Lopez that it would not be prudent to call that witness, and Lopez's statements during trial that counsel had spoken truthfully and that he was satisfied in not presenting the alibi witnesses.[4] (Id. at 5–6.) Justice Demarest further determined that, in any event, "counsel could have come to the reasonable and strategic conclusion that presenting Rivera and Guido as witnesses would not benefit the defense" because their "affidavits d[id] not necessarily exculpate [Lopez]." (Id. at 6.) She reasoned that "[t]he fact that Rivera and Guido may have seen [Lopez] in the early hours of August 31, 1989, while sharing drinks, does not render [Lopez's] participation in the

shooting impossible," because the "affiants both lived near the building where the shooting took place and [Lopez] could have easily been in both places during that stretch of time." (Id.) The court also rejected Lopez's contention that counsel was ineffective for failing to follow up on the Cafield letter because: (1) his counsel "Anolik attempted to raise the Cafield letter before the court at sentencing and the court reserved defendant's right to raise any issue at a later time"; (2) "[i]n view of Cafield's background, including questions about her mental stability, and the threats to Chapman's safety"—which the state claimed may have motivated her recantation—"counsel could have legitimately declined to use the Cafield letter to challenge Chapman's testimony"; and (3) "[e]ven if counsel had pursued the letter as the basis of a post-conviction motion, the inherent weakness of the letter and the recantation would dictate that there is no reasonable probability that the outcome would have been different." (Id. at 7.)

Second, Justice Demarest rejected Lopez's claim of actual innocence. (Id. at 7–9.) She held that Lopez had "failed to state a legal basis for his claim" because New York "law does not explicitly recognize a free-standing claim of actual innocence that may be addressed within the parameters of C.P.L. § 440.10(1)(h)." (Id. at 7–8 (citing C.P.L. § 440.30(4)(a).) She further determined that Lopez's claim was "not credible" because of the "strong evidence of guilt at [his] trial." (Id. at 8.) And, after noting Lopez's reliance upon Chapman's recantation, Justice Demarest found that Lopez's position was "undermined by the fact that the jury had adequate opportunity to assess Chapman's credibility," including through discussions

---

4. Justice Demarest did not respond to Lopez's allegation that he only learned after trial that counsel had not in fact spoken to Guido and Rivera. (See Lopez Aff.; Guido Aff.; Rivera Aff.)

by the defense of "her life as a prostitute" and the effects of her drug use. (*Id.*)

Third, Justice Demarest rejected Lopez's claim based on newly discovered evidence because he had "failed to establish that the evidence would probably change the result if it were presented at trial," particularly in light of the unreliability of recantation testimony. (*Id.* at 9.)

Fourth, Justice Demarest rejected Lopez's due process claim because of the questionable veracity of Chapman's recantation and because of Lopez's failure to present evidence showing that the prosecutor knew about the alleged perjury. (*Id.* at 10 (citing C.P.L. § 440.30(4)(d)).)

Lopez submitted an application for leave to appeal Judge Demarest's decision to the Appellate Division, which the court denied on April 7, 2011. (N.Y. App. Div. Decision & Order on Appl. (Docket Entry # 59–6).) Lopez then filed an application with the Court of Appeals for a certificate to appeal the decision pursuant to C.P.L. § 460.20, which was dismissed on June 30, 2011. (N.Y. Ct. of Appeals Certificate Dismissing Appl. (Docket Entry # 59–6).)

### F. Amended Habeas Petition and Request for Evidentiary Hearing

Having exhausted his claims, Lopez filed an Amended Petition for Writ of Habeas Corpus with this court on November 25, 2011. (Am. Pet. (Docket Entry # 54).) He raised three claims that he had presented to the state court in his motion to vacate judgment: (1) that he was actually innocent of the crimes of conviction, thus tolling the applicable limitation period (Pet. Mem. (Docket Entry # 56) at 22–29); (2) that he received ineffective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, because of trial counsel's failure to investigate and call the potential alibi witnesses and to investigate Cafield's letter (*id.* at 30–35); and (3) that the use of Chapman's perjured testimony at trial violated his Fourteenth Amendment right to due process of law (*id.* at 36–38).[5] Lopez requested an evidentiary hearing on his actual innocence claim (*id.* at 28–29) and his ineffective assistance of counsel claim (*id.* at 35). Respondent filed an opposition (Resp. Opp'n (Docket Entry # 59)) and Lopez filed a reply reiterating that an evidentiary hearing was appropriate (Pet. Reply (Docket Entry # 64)).

On April 17, 2012, the court granted Lopez's request for an evidentiary hearing and directed Lopez to file a letter to the court addressing the proposed scope of the hearing. (Docket Entry # 66.) Lopez's counsel filed a letter in accordance with this Order on May 8, 2012, proposing that the hearing address Lopez's actual innocence and ineffective assistance claims and providing a list and description of the witnesses who were available to testify. (Shivers Ltr. of May 8, 2012 (Docket Entry # 67).) Counsel also noted that Frost, the investigator who had worked on Lopez's case, had passed away on April 17,

---

5. It is somewhat unclear whether Lopez's Amended Petition raises only these three claims or whether it additionally raises six claims that he raised in his original Petition and on direct appeal, but not on his motion to vacate judgment. (*Compare* Pet. at 2–3 (asserting seven grounds for habeas relief: ineffective assistance and six others raised on direct appeal), *with* Am. Pet. ¶ 7 (referring to Lopez's memorandum of law in support of the Amended Petition for the grounds raised in support), *and* Pet. Mem. at 1 (stating that Lopez's amended petition "supplement[s]" his original Petition and that this memorandum of law would address Lopez's actual innocence, ineffective assistance, and due process claims).) In the letter that Lopez will provide to this court within seven days of this Memorandum and Order (*see* Part IV, *infra*), he should clarify which claims his Amended Petition is raising.

2012, and asked for additional time to obtain Frost's notes and to make a further effort to locate certain potential witnesses. (*Id.* at 1.) Respondent filed a letter in response arguing "that no evidentiary hearing should be held," but that, "if an evidentiary hearing is held, it should be limited to the issue of whether petitioner has established a credible gateway claim of actual innocence." (Goodman Ltr. of May 21, 2012 (Docket Entry # 68) at 1.) Respondent argued that the Supreme Court's decision in *Pinholster* prevented this court from considering new evidence in connection with Lopez's ineffective assistance claim. (*Id.* at 1–2.) Lopez's counsel filed two additional letters arguing that a hearing on both Lopez's actual innocence and ineffective assistance claims was appropriate and updating the court on the status of the investigation. (Shivers Ltr. of May 31, 2012 (Docket Entry # 69); Shivers Ltr. of June 11, 2012 (Docket Entry # 70).)

## II. APPLICABLE LAW

Before discussing *Pinholster*. it is important to review the statutory framework governing Lopez's Amended Petition and his request for an evidentiary hearing.

Section 2254(a) of Title 28 empowers a district court to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Section 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), sets forth a highly deferential standard of review that federal courts must apply when reviewing a claim in a habeas corpus petition that was adjudicated on the merits in state court proceedings:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 The relationship between § 2254(a) and § 2254(d) is essential here. Section 2254(d) sets forth a necessary but not sufficient prerequisite to habeas relief *only* with respect to claims that were adjudicated on the merits in state court: that the state court's adjudication of the claim resulted from either an unreasonable determination of federal law or of the facts. Section 2254(a) applies to *any* claim raised by a petitioner in custody pursuant to a judgment in state court—whether or not the state court adjudicated that claim on the merits—and permits a district court to grant habeas relief only if the petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." Thus, when faced with a claim for habeas relief that was adjudicated on the merits in state court, the court must first ask whether the state court's adjudication of the claim was unreasonable under § 2254(d). If so, the court may nonetheless grant habeas relief only if the petitioner has shown a violation of federal law under § 2254(a). *See Paige v. McDonough*, No. 06–CV–389 (MCR)(EMT), 2008 WL 1844358, at *8 (N.D.Fla. Apr. 22, 2008). And crucially, in that second analysis, the court would review the petitioner's claim de novo—i.e., with no deference to the state court's legal conclusions. *See Panet-*

*ti v. Quarterman,* 551 U.S. 930, 953, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007) ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires."); *Detrich v. Ryan,* 677 F.3d 958, 982 (9th Cir.2012) (although *Panetti's* analysis was addressed to § 2254(d)(1), the court could "see no reason why [its] approach should be different where a state court's adjudication of a claim is dependent on an antecedent unreasonable determination of fact" under § 2254(d)(2)).

AEDPA further provides that "a determination of a factual issue made by [the] State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Like § 2254(a), this provision applies whether or not the claim at issue was adjudicated on the merits by the state court.

By negative inference, 28 U.S.C. § 2254(e)(2) then permits a district court to conduct an evidentiary hearing in certain circumstances to give the petitioner a chance to rebut the presumption of correctness of a state court's factual finding or to support a claim on which the state court has not made any pertinent factual findings. *See* 28 U.S.C. § 2254(e)(2) (stating that "the court shall not hold an evidentiary hearing on [a] claim" if "the applicant has failed to develop the factual basis of [the] claim in State court proceedings," with certain exceptions). This provision also applies to all habeas claims raised by a state prisoner.

In accordance with § 2254(e)(2), Rule 8 of the Rules Governing Section 2254 Cases in the United States District Courts requires district courts to consider "whether an evidentiary hearing is warranted" in any § 2254 case that it does not dismiss. The Second Circuit has held that Rule 8 gives a district court "broad discretion" to conduct an evidentiary hearing "where § 2254(e)(2) does not preclude [such a] hearing." *Drake v. Portuondo,* 321 F.3d 338, 347 (2d Cir.2003). Indeed, with respect to ineffective assistance claims, the Circuit has noted that conducting an evidentiary hearing is the "usual practice." *Eze v. Senkowski,* 321 F.3d 110, 136 (2d Cir.2003).

The Supreme Court changed much of this landscape in *Cullen v. Pinholster,* —— U.S. ——, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011). In that case, a state prisoner brought a § 2254 petition based on an ineffective assistance claim that had been rejected on the merits in a state collateral proceeding. *Id.* at 1396. He argued that counsel was ineffective at the penalty phase of his capital trial because counsel had failed to sufficiently develop mitigating evidence, including evidence that the petitioner suffered from mental disorders. *Id.* The district court conducted an evidentiary hearing at which the petitioner called new mental health experts who had never testified or submitted any opinion in the state court proceedings. *Id.* at 1397. The court granted the petitioner habeas relief, and the Ninth Circuit affirmed, concluding that the state court had unreasonably applied the standard for ineffective assistance set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Pinholster v. Ayers,* 590 F.3d 651 (9th Cir.2009) (en banc).

The Supreme Court reversed, concluding that the Ninth Circuit had erred in relying upon the evidence produced at the evidentiary hearing. *Pinholster,* 131 S.Ct. at 1401, 1411. It held "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated

the claim on the merits," and that therefore "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review." *Id.* at 1398, 1400. The Court reasoned that § 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made," and found puzzling "the notion that a state court c[ould] be deemed to have unreasonably applied federal law to evidence it did not even know existed." *Id.* at 1398, 1399 n. 3. As the Court's opinion notes, this reasoning applies with equal or greater force to state determinations of fact under § 2254(d)(2)—which includes the language "in light of the evidence presented in the State court proceeding"—and so review of those determinations is also limited to the record that was before the state court. *See id.* at 1400 n. 7 (noting that § 2254(d)(2) contains "additional clarity" with respect to the restriction of the district court's analysis to the state court record); *Skipwith v. McNeil,* No. 09–CV–60361 (CMA), 2011 WL 1598829, at *2 (S.D.Fla. Apr. 28, 2011) ("Despite its focus on section 2254(d)(1), [*Pinholster*] makes clear that evidence introduced in the federal proceeding is also irrelevant to section 2254(d)(2) review."); *Reyes v. Ercole,* No. 06–CV–5525 (SHS), 2011 WL 1560800, at *2 (S.D.N.Y. Apr. 25, 2011).

*Pinholster* was careful to stress, however, that its holding did not entirely preclude district courts from holding evidentiary hearings on § 2254 claims. The Court rejected the petitioner's argument that its holding rendered superfluous § 2254(e)(2)'s limitations on the discretion afforded habeas courts to take new evidence in an evidentiary hearing; rather, it noted, "[s]ection 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief," including where a claim was "not adjudicated on the merits in state court." *Id.* at 1401. The Court expressly declined to reach the issue of "whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has satisfied." *Id.* at 1411 n. 20.

## III. DISCUSSION

The court now discusses whether Lopez is entitled to an evidentiary hearing on either his gateway claim of actual innocence or his ineffective assistance claim (or both) and to what extent (if any) the court may rely upon the evidence produced at the hearing to resolve these claims. The court then discusses briefly when such a hearing should be held in relation to the court's ruling on the timeliness and merits of Lopez's Petition.

### A. Actual Innocence

Respondent argues that Lopez is not entitled to an evidentiary hearing on his gateway claim of actual innocence.[6]

6. The Supreme Court has held that a petitioner may use a claim of actual innocence as a "gateway" to excuse a procedural default, enabling him to obtain review of procedurally barred constitutional challenges to his conviction. *Schlup v. Delo,* 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Doe v. Menefee,* 391 F.3d 147, 161 (2d Cir. 2004). But until very recently, neither the Supreme Court nor the Second Circuit had "rule[d] on whether the Constitution requires an actual innocence exception to the AEDPA's statute of limitations." *Whitley v. Senkowski,* 317 F.3d 223, 225 (2d Cir.2003) (emphasis added) (internal quotation marks and alteration omitted) (reasoning that it should decide this issue only when presented with a credible and compelling showing of actual innocence); *see also Doe,* 391 F.3d at 147. This week, in *Rivas v. Fischer,* 687 F.3d 514 (2d Cir.2012), the Second Circuit held that "a credible showing of actual innocence ... warrants an equitable exception to AEDPA's limitation period, allowing the petitioner to have his otherwise time-barred claims heard by a federal court." *Id.,* 687 F.3d at 518 (concluding that the petitioner had made a credible showing of

(Goodman Ltr. of May 21, 2012, at 2.) The court disagrees.

■ Respondent concedes that *"Pinholster* does not preclude an evidentiary hearing on the procedural issue of whether petitioner has established a credible gateway claim of actual innocence." *(Id.) Cf. United States v. Hardy,* No. 10–CV–2098 (MFK), 2011 WL 1575662, at *4 (N.D.Ill. Apr. 25, 2011) (refusing to hold evidentiary hearing on ineffective assistance claim in light of *Pinholster* but permitting hearing on actual innocence claim). Respondent also does not contend that an evidentiary hearing on Lopez's actual innocence claim is barred by 28 U.S.C. § 2254(e)(2).[7] Rather, Respondent argues that "28 U.S.C. § 2254(e)(1) provides an independent bar to an evidentiary hearing on th[is] issue." *(Id.)* As Respondent points out, "[t]he state court found that petitioner's claim of actual innocence was not credible in light of the strong evidence of guilt presented at petitioner's trial," a finding that is presumed correct under

§ 2254(e)(1). *(Id.; see also* 440 Order at 8.) Respondent argues that Lopez "has not rebutted [this finding] by clear and convincing evidence" and, "[t]herefore, an evidentiary hearing should not be held on this issue." (Goodman Ltr. of May 21, 2012, at 2.)

Respondent misses the point. The court need not decide at this time whether Lopez has *already* rebutted the state court's factual findings by clear and convincing evidence; the entire purpose of the hearing is to give Lopez an opportunity to do so. Because an evidentiary hearing is not barred by either *Pinholster* or § 2254(e)(2), the court has "broad discretion" to conduct such a hearing, *Drake,* 321 F.3d at 347—discretion that is typically exercised when a "new hearing would have the potential to advance the petitioner's claim," *Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir.2000).

■ That is certainly the case here. As the court has previously found, there is "substantial support for Lopez's innocence

---

actual innocence, and remanding to the district court to consider the merits of his underlying constitutional claims). In order to be excused from the limitation period, a petitioner must make "a claim of actual innocence [that is] both 'credible' and 'compelling.' " *Id.* at 541 (quoting *House v. Bell,* 547 U.S. 518, 521, 538, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006)). "For the claim to be 'credible,' it must be supported 'with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' " *Id.* (quoting *Schlup,* 513 U.S. at 324, 115 S.Ct. 851). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.' " *Id.* (quoting *House,* 547 U.S. at 538, 126 S.Ct. 2064).

7. In any event, the court finds no failure on Lopez's part "to develop the factual basis of

[his] claim" in the state court. 28 U.S.C. § 2254(e)(2). "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor,* 529 U.S. 420, 432, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000). The court finds no lack of diligence in Lopez's development of the record before Justice Demarest. To the contrary, Lopez submitted to Justice Demarest all of the extensive documentation that he submitted to this court in connection with his Amended Petition. *Cf. Yiu v. Keane,* No. 99–CV–12103 (RMB)(FM), 2003 WL 22047852, at *5 (S.D.N.Y. Sept. 2, 2003). To the extent that there are gaps in the record, those gaps are in part due to the deaths of certain potential witnesses, in part due to Lopez's inability to locate other witnesses after a thorough investigation, and in part due to Justice Demarest's denial of Lopez's request for an evidentiary hearing.

claim." (Sept. 13, 2005, Mem. & Order at 2.) Among other things, Lopez has presented evidence that: (1) the prosecution's case was based almost entirely on the testimony of a crack addict who claimed to have seen Lopez commit the crime through a partially ajar door; (2) this witness subsequently recanted her testimony; (3) the prosecution's only other witness described a shooter with physical characteristics very different from Lopez's; and (4) two people claim that Lopez was with them on the morning of the shooting and could not have committed the crimes. (*See* Part I.A., *supra.*) While Chapman is unavailable to testify, an evidentiary hearing will allow the court to explore the circumstances under which she provided her recantation documents to Lopez's family members and to attempt to ascertain their authenticity and reliability. It will allow the court to obtain more detail regarding the timing and nature of Guido's and Rivera's experiences with Lopez on the morning of the shooting, and particularly to explore whether—contrary to Justice Demarest's finding (*see* 440 Order at 6)— Lopez could have been with them and still committed the crimes of conviction. And a hearing will, of course, allow Lopez himself to testify if he chooses to do so.

In sum, it is undisputed that neither *Pinholster* nor § 2254(e)(2) precludes an evidentiary hearing with respect to Lopez's actual innocence claim. And the court finds, in its "broad discretion," *Drake,* .321 F.3d at 347, that a hearing is needed to resolve the complicated factual allegations relevant to Lopez's innocence claim and to give Lopez a chance to rebut Justice Demarest's factual findings, as 28 U.S.C. § 2254(e)(1) permits him to do. The court will therefore hold an evidentia-

ry hearing on his claim. *See* Rules Governing Section 2254 Cases 8.

## B. Ineffective Assistance of Counsel

The more difficult issue is whether *Pinholster* permits Lopez to present evidence at the hearing in support of his ineffective assistance claim.[8] Lopez is so permitted, but with a caveat. The court will not rely upon the evidence produced at the hearing to determine whether Lopez has satisfied 28 U.S.C. § 2254(d). It will rely upon this evidence only to make the ultimate determination of whether Lopez is entitled to habeas relief under 28 U.S.C. § 2254(a)— an issue that the court will not reach unless it first concludes, based solely on the state record, that Lopez has satisfied one of the prongs of § 2254(d).

### 1. *Section 2254(d)*

◼ *Pinholster* precludes the court from relying upon evidence produced at the hearing to determine whether the state court's adjudication of Lopez's ineffective assistance claim was unreasonable under § 2254(d). This conclusion is apparent from *Pinholster* itself. *See* 131 S.Ct. at 1398 ("[R]eview under 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."); *id.* at 1400 ("[E]vidence later introduced in federal court is irrelevant to § 2254(d)(1) review."); *id.* at 1400 n. 7 (section 2254(d)(2) contains "additional clarity" in its restriction of a district court's inquiry to the " 'evidence presented in the State court proceeding' " (quoting 28 U.S.C. § 2254(d)(2)); *id.* at 1413 (Sotomayor, J., dissenting) ("New evidence adduced at a federal evidentiary hearing is now irrelevant to determining whether a petitioner has satisfied § 2254(d)(1)."). Moreover, so far as the court is aware,

8. For the reasons discussed in connection with Lopez's actual innocence claim, § 2254(e)(2) does not preclude the court from

holding a hearing on Lopez's ineffective assistance claim. (*See supra* n. 7.)

every lower court to address the issue has concluded that *Pinholster* prevents reliance upon evidence produced at an evidentiary hearing for the purposes of § 2254(d), including the Second Circuit in a summary disposition. *See Ridgeway v. Zon,* 424 Fed.Appx. 58, 59 (2d Cir.2011) (declining, in light of *Pinholster,* to remand a § 2254 petition to the district court to give petitioner's counsel an opportunity to explain his failure to call witnesses because "the Supreme Court has apparently foreclosed that avenue for [the court] here"); *Bourne v. Curtin,* 666 F.3d 411, 415 (6th Cir.2012) ("Because the state court considered [petitioner's] ineffectiveness argument on the merits, ... [petitioner] is not entitled to an evidentiary hearing."); *Brown v. Wenerowicz,* 663 F.3d 619, 629 (3d Cir.2011) ("In light of *Pinholster,* district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d)."); *Kirby v. Att'y Gen. ex rel. N.M.,* No. 11–2082, 2011 WL 4346849, at *11 (10th Cir. Sept. 19, 2011) (holding that petitioner's "request to expand the record or to hold an evidentiary hearing s[ought] to place additional evidence before the federal district court that was not part of the record before the state court," which was "no longer permitted under [*Pinholster* ]"); *Pape v. Thaler,* 645 F.3d 281, 287 (5th Cir.2011) (holding that "the district court erred by conducting the evidentiary hearing and by relying on evidence from that hearing to conclude that the state habeas court had unreasonably applied *Strickland* "); *Jackson v. Kelly,* 650 F.3d 477, 485 (4th Cir.2011) ("In light of [*Pinholster's* ] admonition that our review is limited 'to the record that was before the state court that adjudicated the claim on the merits,' we avoid discussion of the evidence taken in the federal evidentiary hearing." (citation omitted) (quoting *Pinholster,* 131 S.Ct. at 1398)); *Atkins v. Clarke,* 642 F.3d 47, 47 (1st Cir.2011) ("The Supreme Court's new decision in [*Pinholster* ] requires that we reject this appeal from a denial of a request for an evidentiary hearing in relation to a petition for habeas corpus."); *Reyes,* 2011 WL 1560800, at *2.

Lopez argues that *Pinholster* "is inapplicable here because [he] does not seek to introduce new evidence that was not considered by the state court." (Shivers Ltr. of May 31, 2012, at 1.) Lopez's argument is somewhat puzzling, but the court assumes he is suggesting that his evidence would not be "new" in the same sense as the new evidence in *Pinholster* because here the state court considered evidence on the same subject matter; he might argue, for example, that he is entitled to present testimony from Guido and Rivera because the state court considered the affidavits of Guido and Rivera.

■ The court is unconvinced. The inquiry required by *Pinholster* is not how closely related the evidence produced at the hearing would be to the record that was before the state court; the question is whether the state court *considered* the hearing evidence. And on this point *Pinholster* is clear: "review under § 2254(d)(1) is limited to the record that was before the state court," and "evidence later introduced in federal court is irrelevant to § 2254(d)(1) review." 131 S.Ct. at 1398, 1400. Because Lopez obviously does not plan on presenting *precisely* the same evidence at the evidentiary hearing that he presented to the state court, the court may not rely upon this evidence for § 2254(d) purposes because the state court never considered it. *See id.*

## 2. *Section 2254(a)*

The court may, however, consider the evidence produced at the hearing to decide whether Lopez is entitled to habeas relief

under 28 U.S.C. § 2254(a), assuming it first decides both that Lopez is entitled to an actual innocence exception and that he has satisfied § 2254(d).

As discussed in Part II, if a court concludes that a habeas petitioner has satisfied § 2254(d), the court must then consider whether the petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). And in conducting its analysis under § 2254(a), the court's review is de novo. *See Panetti*, 551 U.S. at 953, 127 S.Ct. 2842; *Detrich*, 677 F.3d at 982.

*Pinholster* does not preclude a court from relying upon evidence produced at an evidentiary hearing for the purposes of a de novo § 2254(a) determination. *Pinholster's* analysis was directed entirely toward the language and context of § 2254(d) and the strangeness of "ask[ing] federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." 131 S.Ct. at 1399. Moreover, in rejecting the petitioner's argument that the Court's holding rendered § 2254(e)(2) superfluous, the Court noted that "[s]ection 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief." *Id.* at 1401. Although the Court raised as example of that "continued force" the situation where a claim was *"not adjudicated* on the merits in state court," *id.* (emphasis added), the same reasoning would logically apply to claims that *have* been adjudicated on the merits by the state court but have *surpassed* § 2254(d), *see id.* at 1412 (Breyer, J., concurring) ("If the federal habeas court finds that the state-court decision fails (d)'s test . . . , then an (e) hearing may be needed."). After all, although § 2254(d) "focuses on what a state court knew and did," § 2254(a) does not involve any review of a state court's conclusions and does not contain "backward-looking language," *id.* at 1398–99; it applies simply because the petitioner is a state prisoner. There is nothing "strange" about relying upon new evidence to determine whether a state prisoner is *currently* "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

■ Although the court is aware of no case in the Second Circuit addressing the issue, the out-of-Circuit courts that have addressed it are in agreement that *Pinholster* is limited to § 2255(d) and does not preclude a district court from considering evidence produced at an evidentiary hearing to determine whether a petitioner is entitled to habeas relief under § 2254(a). *See, e.g., Detrich*, 677 F.3d at 983 (finding that it could "consider evidence [petitioner] raised for the first time in federal court in analyzing whether [counsel's] deficient performance prejudiced the defense" where "§ 2254(d)(2) d[id] not bar federal habeas relief"); *Fanaro v. Pineda*, No. 10–CV–1002 (GLF), 2012 WL 1854313, at *6 (S.D.Ohio May 21, 2012) ("Because the Court concludes that the state courts unreasonably applied or contravened federal law in rejecting [petitioner's] ineffective assistance claim, Petitioner may present new or additional evidence in support of this claim at the evidentiary hearing."); *Caudill v. Conover*, 871 F.Supp.2d 639, 649 (E.D.Ky.2012) ("[T]he *Pinholster* decision only holds that new evidence may not be considered in determining whether a Petitioner's claims are barred by § 2254(d). . . . Accordingly, the Court may consider new evidence obtained by way of discovery or an evidentiary hearing if the Petitioner first overcomes 28 U.S.C. § 2254(d) based solely on the record that was before the state court."); *Skipwith v. McNeil*, No. 09–CV–60361 (CMA), 2011 WL 1598829, at *5 (S.D.Fla. Apr. 28, 2011)

("Now that the section 2254(d) hurdle has been cleared, the court agrees with [the] reasons for holding an evidentiary hearing and considers [petitioner's] ineffective assistance of counsel claim on its merits."); *Ballinger v. Prelesnik*, 844 F.Supp.2d 857, 868 (E.D.Mich.2012) (stating that *"Pinholster* concerns the application of § 2254(d), and not § 2254(a)," and that although the court had already "determined that § 2254(d)'s hurdle had been cleared, [ ] a hearing was still required to determine whether, in fact, Petitioner's constitutional rights had been violated"); *Williams v. Mitchell*, No. 09–CV–2246 (DN), 2011 WL 5118469, at *2 (N.D.Ohio Oct.27, 2011) (*"Pinholster* does not prevent habeas corpus courts from considering evidence presented at an evidentiary hearing once it has determined that the petitioner's claim satisfies AEDPA's Section 2254(d).").

To be sure, a few of the cases discussing *Pinholster* speak in somewhat absolute terms with respect to a district court's inability to rely upon new evidence produced at an evidentiary hearing in ruling on a § 2254 petition. *See, e.g., Bourne*, 666 F.3d at 415 ("Because the state court considered [petitioner's] ineffectiveness argument on the merits, ... [petitioner] is not entitled to an evidentiary hearing."); *Kirby*, 2011 WL 4346849, at *11 ("seek[ing] to place additional evidence before the federal district court that was not part of the record before the state court" is "no longer permitted under [*Pinholster* ]"); *Ridgeway*, 424 Fed.Appx. at 59 (court could not remand to give petitioner's counsel an opportunity to explain his failure to call witnesses because "the Supreme Court has apparently foreclosed that avenue for [the court] here"); *Atkins*, 642 F.3d at 47 ("The Supreme Court's new decision in [*Pinholster* ] requires that we reject this appeal from a denial of a request for an evidentiary hearing in relation to a petition for habeas corpus."). Apart

from being nonbinding, however, these cases were not addressing whether *Pinholster* permits a court to rely upon hearing evidence for § 2254(a) purposes. Indeed, each of these cases affirmed the district court's determination that § 2254(d) barred the petitioner's claim; thus, there was no § 2254(a) determination to be made that might call for an evidentiary hearing.

■ In sum, in light of *Pinholster*, AEDPA's language, and the out-of-Circuit case law addressing the issue, the court concludes that, if it ultimately decides that the state court's adjudication of Lopez's ineffective assistance claim was unreasonable under § 2254(d), it may consider evidence produced at the evidentiary hearing to decide whether Lopez is entitled to habeas relief under 28 U.S.C. § 2254(a).

## C. Timing of the Evidentiary Hearing

The court must next decide whether it should hold the evidentiary hearing before deciding whether Lopez has satisfied § 2254(d). It will do so.

In *Pinholster*, the Supreme Court expressly declined to decide "whether a district court may ever choose to hold an evidentiary hearing before it determines that § 2254(d) has been satisfied." 131 S.Ct. at 1411 n. 20. The court is aware of no § 2254 case since *Pinholster* in which a court has done so, except in those cases in which the court had already held an evidentiary hearing before *Pinholster* was decided. *See, e.g., Skipwith*, 2011 WL 1598829, at *1, *5; *Ballinger*, 844 F.Supp.2d at 863, 868–69. Indeed, at least two courts have decided to resolve the § 2254(d) issue prior to holding a hearing despite concluding that it could consider evidence produced at a hearing for § 2254(a) purposes. *See Caudill*, 871

F.Supp.2d at 649 ("deny[ing] Petitioner's motions [for discovery and an evidentiary hearing] without prejudice pending § 2254(d) review of the petition," rather than "permit[ting] the Petitioner to conduct any factual development on the front-end[ ] with the caveat that any new evidence w[ould] be put aside and only be considered after § 2254(d) review"); *Williams*, 2011 WL 5118469, at *2.

■ Nevertheless, no authority prevents this court from holding an evidentiary hearing before making a § 2254(d) ruling—AEDPA does not speak to the issue, and *Pinholster* deliberately left it open. Thus, as with all hearing-related decisions not controlled by AEDPA, the court has "broad discretion" to decide the timing of the hearing. *Drake*, 321 F.3d at 347.

The court is sensitive to the fact that deciding the § 2254(d) issue before holding a hearing could save the court substantial judicial resources in the event that Lopez's Petition is denied on § 2254(d) grounds. On the other hand, if the court ultimately concludes that Lopez has satisfied § 2254(d), this option would only have the effect of significantly delaying the hearing, a result that would be unfortunate in a proceeding that has been pending for ten years. This concern is especially compelling because, without deciding the issue at this time, the court believes that Lopez has a strong chance of satisfying § 2254(d) and thus necessitating consideration of evidence to resolve the actual innocence and § 2254(a) issues.[9] Finally, the court finds that it would be odd and perhaps improper to resolve whether Lopez has satisfied § 2254(d) before deciding whether the court is entitled even to reach the merits of his Petition, which depends on whether Lopez is entitled to an actual innocence exception to AEDPA's limitation period. Since a hearing is necessary on that issue, and that hearing will involve evidence substantially overlapping with the evidence pertinent to Lopez's ineffective assistance claim, the court concludes that judicial economy is best served by holding a single hearing on both claims before deciding the merits of either.

9. Lopez appears to have an especially strong argument that Justice Demarest's decision was based on an unreasonable determination of the facts under § 2254(d)(2). The court finds alarming Justice Demarest's cursory analysis, without an evidentiary hearing, of Lopez's claim that counsel failed to investigate Guido and Rivera as potential alibi witnesses. In the absence of a hearing, the court fails to see how Justice Demarest could confidently conclude: (1) that Lopez's allegation that counsel never spoke to Guido and Rivera was "simply not credible," when both Guido and Rivera swore that counsel never spoke to them in the affidavits that were submitted to Justice Demarest; and (2) that Lopez could have been with Guido and Rivera on the morning of the shooting and committed the crime, when both Guido and Rivera suggested otherwise in their affidavits. (440 Order at 6; *see also* Guido Aff.; Rivera Aff.) Justice Demarest's findings are of course presumed to be correct under § 2254(e)(1), but there is case law suggesting that the failure to hold an evidentiary hearing on a hotly contested factual issue can suffice to clear § 2254(d)'s hurdle. *See, e.g., Winston v. Kelly*, 592 F.3d 535, 557 (4th Cir.2010) (finding that the state court's denial of discovery and an evidentiary hearing produced an adjudication of "a claim that was materially incomplete," and thus instructing the district court to extend no deference under AEDPA to the state court); *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.2004) (explaining that § 2254(d)(2) may be satisfied if "the process employed by the state court is defective"); *Fanaro*, 2012 WL 1854313, at *3 (by "fail[ing] to hold a hearing at which [ ] a credibility determination could be made ..., the state court unreasonably applied clearly established law"); *Ballinger*, 844 F.Supp.2d at 866–67 (state court's rejection of ineffective assistance claim based on counsel's failure to investigate alibi witnesses was unreasonable under § 2254(d) because the lack of evidence supporting petitioner's assertions was "solely" due to the state court's denial of petitioner's request for an evidentiary hearing).

## IV. CONCLUSION

For the reasons set forth above, Lopez is entitled to an evidentiary hearing on both his gateway claim of actual innocence and his claim of ineffective assistance of counsel. With respect to his ineffective assistance claim, the court shall not rely upon evidence produced at the hearing to decide whether the state court's adjudication of his claim was unreasonable under 28 U.S.C. § 2254(d). But if the court later concludes—based solely on the state court record—that Lopez has satisfied § 2254(d), it will consider the evidence generated at the hearing to determine whether Lopez is being held in custody in violation of the United States Constitution, thus entitling him to habeas relief under 28 U.S.C. § 2254(a). The court will hold the hearing on Lopez's claims before it rules on the substance of those claims.

Lopez shall update the court by letter, within seven days of the date of this Memorandum and Order, on the status of his preparation for the evidentiary hearing, and, if possible, shall inform the court of a feasible time or time range for the hearing to be held. Lopez shall also inform the court whether he is currently raising only his actual innocence, ineffective assistance, and due process claims, or whether he is additionally raising the claims he raised in his original Petition and on direct appeal but not in his Amended Petition or on his motion to vacate judgment. (*See supra* n. 5.) Respondent may submit a letter in response within three days of Lopez's letter, if it so chooses.

SO ORDERED.